```
    IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
        MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


SABINE SIMMONS,              )
                             )
    Plaintiff,               )
                             )
                             )     CIVIL ACTION NO.
    v.                       )       2:18cv640-MHT
                             )           (WO)
ALABAMA STATE UNIVERSITY     )
and LEON C. WILSON,          )
                             )
    Defendants.              )
```

OPINION

Pursuant to the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654, plaintiff Sabine Simmons charges that defendants fired her for asserting leave under the act. The defendants are Alabama State University (ASU) and former ASU Interim President Leon C. Wilson, in his individual capacity.

This court has jurisdiction pursuant to both 29 U.S.C. § 2617 (FMLA) and 28 U.S.C. § 1331 (federal question. This case is currently before the court on the defendants' motion for summary judgment on

Simmons's FMLA retaliation cause of action. For the reasons that follow, the defendants' motion will be granted.

## I. SUMMARY-JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the factual allegations in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact, and summary judgment is appropriate in favor of the moving party. *See Beal v.*

*Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

## II. BACKGROUND

In *Simmons v. Ala. State Univ.* 2021 WL 3375671 (M.D. Ala. Aug. 03, 2021) (Thompson, J.), the court previously granted summary judgment in favor of defendants on all of Simmons's claims in this litigation but her FMLA claim. This court assumes the reader is familiar with that opinion and presents only a condensed version of the background. *See id.* at *2-8.

Simmons began teaching in the Health Information Management (HIM) department of ASU's College of Health Sciences in 2008 on a temporary contract, and continued working there on contracts that were renewed annually. In 2014, she was named an assistant professor. In 2016, when the chair of the department left, Simmons applied for that position. She was passed over in favor of Dr. Bridgette Stasher-Booker, who served as

interim HIM department chair starting in September 2016.

During the period at issue in this lawsuit, Simmons was supervised by Stasher-Booker; by Dr. Cheryl Easley, then the Dean of the ASU College of Health Sciences; and by Dr. Karyn Scissum Gunn, then ASU's Interim Provost and Vice President of Academic Affairs. Defendant Wilson served as ASU's Interim President during the relevant period.

During late 2016 and the first half of 2017, Simmons had a number of conflicts at ASU. *See Simmons*, 2021 WL 3375671, at *4-7. In October 2016 she refused to comply with Stasher-Booker's repeated requests not to forward her office phone to her personal cell phone during business hours. In early January 2017, Stasher-Booker warned Simmons about her improper and unprofessional etiquette when communicating over email following a heated email exchange. In the fall of 2016, a secretary at the HIM department called the police on Simmons over a parking dispute. On January

4

25, 2017, Simmons filed a grievance against Stasher-Booker with the ASU Office of Human Resources asserting that she was creating a hostile-work environment by hounding her about call-forwarding.

On January 29, 2017, Simmons informed Stasher-Booker that she would be taking FMLA leave. Stasher-Booker thanked Simmons for informing her and asked her to "work with Human Resources regarding FMLA" and to provide the materials related to the courses that she was teaching. Defendant's Evidentiary Submission (Email) (Doc. 50-14). On February 8, the Office of Human Resources notified Simmons that her FMLA request was approved, with an estimated return date of April 30, 2017.

That April, shortly before Simmons was scheduled to return from leave, Interim Provost Gunn sent Simmons a letter indicating that her temporary contract would not be renewed based on "recommendations from ... college administrators that preclude any reappointment

considerations for the next academic year." *Id*. (Letter) (Doc. 50-15) at 1.

## III. ANALYSIS

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions" of her position.  29 U.S.C. § 2612(a)(1)(D). The FMLA creates two distinct types of claims: interference claims, in which an employee asserts that her employer denied or otherwise interfered with her substantive rights under the statute, § 2615(a)(1)(2009), and retaliation claims, in which an employee asserts that her employer discriminated or retaliated against her because she engaged in activity protected by the statute, § 2615(a)(2); *see also Sorrells v. Lake Martin, Inc.*, 2011 WL 627049, at *8-9 (M.D. Ala. Feb. 11, 2011) (Thompson, J.).

In deciding a summary-judgment motion on an FMLA retaliation claim, the court is guided by the burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04. *See Brungart v. Bellsouth Telecomm., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000). Under the *McDonnell Douglas* analysis, a plaintiff who charges retaliation bears the initial burden of proving a prima-facie case, which is established by showing (1) she availed herself of a protected right under the FMLA; (2) she suffered an adverse-employment decision; and (3) there is a causal connection between the protected activity and the adverse-employment decisions. *See Parris v. Miami Herald Publishing Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000).

If the plaintiff establishes a prima-facie case, the burden shifts to the defendant to present a legitimate non-retaliatory motive for the adverse-employment decision. *See Norman v. S. Guar. Ins. Co.*, 191 F. Supp. 2d 1321, 1332 (M.D. Ala. Mar.

14, 2002) (Thompson, J.). Once the defendant presents such a motive, the burden then shifts back to the plaintiff to show that there is a genuine issue of material fact as to whether the proffered reason is pretextual. *See id*. If the plaintiff can demonstrate such a genuine issue of material fact, then she has met her burden at summary judgment. *See id*.

Here the court need only consider the final two issues: first, whether the defendants have presented a legitimate non-retaliatory motive for the adverse-employment decision; and, second, whether the plaintiff has presented sufficient evidence to show that the reasons given by the defendants were pretext for retaliation.

### 1. Employer's Non-Retaliatory Reasons

Defendants assert several non-retaliatory reasons for the decision not to reappoint Simmons. First, they contend that Easley, the Dean of the College of Health Sciences, recommended to Gunn, the Associate Provost,

that Simmons not be extended a new contract because she felt that Simmons had a disgruntled attitude. Additionally, the defendants offer Simmons's refusal to stop forwarding her office phone to her personal cell phone during business hours, despite being ordered to cease doing so by Stasher-Booker.  Lastly, the defendants assert that the decision was based on a combative email sent by Simmons.  As the court stated in the earlier case, the email "was deemed a serious breach of email etiquette and prompted an apology." *See Simmons*, 2021 WL 3375671, at *13.

The above showing of reasons meets the defendants' burden at this stage and shifts the burden back to Simmons to show that the proffered reasons are a pretext for FMLA retaliation.


### 2. Simmons's Showing of Pretext

"[T]o establish pretext at the summary judgment stage, a plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or

9

contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1137 (11th Cir. 2020) (en banc) (quotation marks and citation removed). A "reason is not pretext for [retaliation] unless it is shown *both* that the reason was false, *and* that [retaliation] was the real reason." *Id*. (citing *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007)) (alterations and emphasis in original) (quotation marks omitted); *see also Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1298 (11th Cir. 2021). *See also Simmons*, 2021 WL 3375671, at *5.

Simmons has not pointed to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that could give a jury reason to disbelieve the asserted reasons not to reappoint her. *Gogel*, 967 F.3d at 1137. Instead, in an effort to show pretext, Simmons mostly relies upon the temporal

10

proximity between her taking FMLA leave and the adverse-employment action. However, the Eleventh Circuit Court of Appeals has determined that temporal proximity alone is not sufficient to establish that an employer's reason for taking an action is pretextual. *See Gogel*, 967 F.3d at 1137 n.15 ("While close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient."); *Davidson v. CHSPSC, LLC.*, 2021 WL 25550400, *21 (11th Cir. 2021) ("Finally, though the disciplinary actions were close in time to Davidson's use of FMLA leave, this temporal proximity, without more, is insufficient evidence of pretext.").

Furthermore, the decision not to renew her contract was made at the usual time for decisions about contract renewals. Simmons was employed on a temporary teaching appointment that was effected through annual contracts. Prior notices that informed Simmons of her *reappointment* were traditionally delivered before the

11

end of the spring term of the academic year, as mandated by the rules of the Employee Handbook. The non-reappointment notice was delivered within the same timeframe. Thus, the temporal proximity of the nonrenewal to Simmons's request for FMLA leave is insufficient, and, in any case, is not sufficiently convincing evidence of retaliatory intent to survive a summary-judgment motion.

Oddly, Simmons also argues that the stated reasons for nonrenewal emerged only *after* she voiced her opposition to Stasher-Booker's alleged derogatory comments about another ASU professor, and therefore must have been manufactured as retaliation for her supporting that professor. While this argument may have been relevant to her claim that she was retaliated against for engaging in protected activity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e-200e-17, it is completely irrelevant to her claim that she was retaliated against for exercising her right to take leave under the FMLA.

Furthermore, although she requested leave after her opposition to derogatory comments and other conflicts she had at ASU, Simmons does not allege, and the evidence does not support, that she met any resistance in taking FMLA leave.

In sum, Simmons has not presented sufficient evidence for a reasonable factfinder to conclude she has been retaliated against for taking FMLA leave. As she has not shown "there is a genuine issue of material fact as to whether the proffered reason is pretextual," *Norman*, 191 F. Supp. 2d at 1332, Simmons has failed to meet her burden at summary judgment. Accordingly, the court will grant the defendants' motion for summary judgment.

\*\*\*

An appropriate judgment will be entered.

DONE, this the 30th day of August, 2021.

                                  /s/ Myron H. Thompson
                             UNITED STATES DISTRICT JUDGE